IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN J. PHILLIPS III, an individual, MARGARET M. PHILLIPS, an individual, <br><br>          Plaintiffs, <br><br>     vs. <br><br> BANK OF AMERICA, a Business Entity, form unknown; et al., <br><br>          Defendants. | CIVIL NO. 10-00551 JMS-KSC <br><br> ORDER GRANTING DEFENDANTS BANK OF AMERICA, COUNTRYWIDE HOME LOANS, INC., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS AND GRANTING LEAVE TO AMEND |

## ORDER GRANTING DEFENDANTS BANK OF AMERICA, COUNTRYWIDE HOME LOANS, INC., AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS AND GRANTING LEAVE TO AMEND

## I. INTRODUCTION

On September 28, 2010, Plaintiffs John J. Phillips III and Margaret M. Phillips ("Plaintiffs"), proceeding *pro se*, filed this action against Defendants Bank of America, Countrywide Home Loans, Inc. ("Countrywide"), Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Moving Defendants") and two other Defendants,[1] alleging federal and state law claims stemming from an August

---

[1] Co-Defendant Fidelity National Title Insurance Company has filed a Statement of No Position. Another co-Defendant Northwest Trustee Services has not entered an appearance, and the docket does not reflect whether it has been served.

2004 mortgage transaction concerning real property located at 160 Keonekai Road,

No. 6-101, Kihei, Hawaii 96753 (the "subject property"), and an apparent recent

foreclosure on the subject property.

Plaintiffs seek declaratory and injunctive relief, as well as damages

and rescission of the mortgage transaction. Bank of America, Countrywide, and

MERS have filed a Motion to Dismiss, seeking dismissal of all counts in the

Complaint. For the reasons set forth, the court GRANTS the Motion with leave to

amend as to certain counts.

## II. BACKGROUND

### A. Factual Background

The court assumes the Complaint's factual allegations are true for

purposes of this Motion. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d

1036, 1039 n.1 (9th Cir. 2003).

According to the Complaint, on August 2, 2004,[2] Plaintiffs entered

into a loan repayment and security agreement with Countrywide. *See* Compl. ¶ 3.

Plaintiffs' claims stem from the consummation of this transaction. Plaintiffs assert,

_____

[2] The Complaint first alleges a transaction date of September 2, 2004, Compl. ¶ 3, but later alleges August 2, 2004 as the transaction date. *Id.* ¶ 19. The record indicates the subject mortgage was recorded on August 11, 2004 and has an effective date of August 2, 2004. *See* Moving Defs.' Ex. B (mortgage). The court takes judicial notice of the recorded mortgage because the Complaint refers to it and it is a public document with no dispute as to authenticity. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (setting forth factors for judicial notice).

among other things, that (1) Countrywide qualified Plaintiffs for a loan which it knew Plaintiffs were not qualified for and could not repay, and that Plaintiffs "should have been declined for this loan," *id.* ¶¶ 25, 27-28, 34; (2) the terms of the transaction were not clear and Defendants never explained the transaction to them, *id.* ¶¶ 21, 29; (3) the loan was more expensive than alternative financing arrangements for which Plaintiffs were qualified, *id.*; and (4) Defendants charged excessive or illegal fees. *Id.* ¶¶ 22, 31.

(The Complaint often improperly fails to distinguish between Defendants as to alleged causes of action. At minimum, to provide proper notice the Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant and explain how each Defendant is liable -- or make clear whether a claim is as to all Defendants).

Plaintiffs assert that Defendants failed to provide forms and disclosures required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; the Equal Opportunity Credit Act; "Fair Lending/Fair Debt Collection Act"; and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* Compl. ¶¶ 11, 13. Defendants allegedly "intentionally concealed the negative implications of the loan they were offering," *id.* ¶ 18, and "failed to perform due diligence," *id.* ¶¶ 20, 30, such that Plaintiffs were sold "a deceptive loan product"

and the acts of deception created an illegal loan and constituted predatory lending. *Id.* ¶¶ 26-27, 39. Defendants' acts allegedly were in violation of federal and state law, including bad faith, breach of fiduciary duty, and unfair and deceptive trade practices.

In their Opposition to the Motion, Plaintiffs assert other potentially relevant details (although none is alleged in the Complaint). They indicate that BAC Home Loans Servicing, LP ("BAC") has already foreclosed on the subject property under a state non-judicial foreclosure procedure. Pls.' Opp'n at 3. The Complaint, however, neither mentions BAC, nor names it as a Defendant. The Opposition contends that BAC is affiliated with Defendant Bank of America. *Id.* The Opposition also indicates the subject property was sold at auction on March 8, 2010. *Id.* It later implies that injunctive relief might still apply to prevent a state-court eviction action. *Id.* at 9.

The Opposition also asserts (again, based not on factual allegations in the Complaint), that Plaintiffs are disputing the validity and effect of the assignment of mortgage from MERS to BAC. *Id.* at 3. They contend that, although the *mortgage* may have been transferred, there is no indication that the underlying promissory note was assigned. *Id.* They argue that "none of the Defendants is the holder of the promissory note" and that therefore the foreclosure

was improper. *Id.* at 4.

Because these factual assertions are not pled in the Complaint, the court cannot consider them in determining whether the Complaint states a claim. The court, however, will consider the assertions in assessing whether -- if particular Counts are deficient -- an amended complaint might plausibly allege facts that could cure identified deficiencies.

**B.     Procedural Background**

Plaintiffs' September 28, 2010 Complaint alleges twelve separate counts, entitled:  "(1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violation of TILA; (5) Violation of RESPA; (6) Rescission; (7) Unfair and Deceptive Acts and Practices (UDAP); (8) Breach of Fiduciary Duty; (9) Unconscionability; (10) Predatory Lending; (11) Quiet Title; and (12) Lack of Standing (MERS)." Plaintiffs also filed an Ex Parte Petition for Injunctive Relief and Temporary Restraining Order on September 28, 2010, which this court denied without prejudice. *See* Doc. 6.

On October 29, 2010, Moving Defendants filed the present Motion, seeking dismissal of all counts.  Subsequently, on or about November 12, 2010, James H. Fosbinder, Esq., entered an appearance on behalf of Plaintiffs.  The

Complaint, however, was not amended by counsel -- the Motion is directed at the prior *pro se* Complaint.  Counsel filed an Opposition on December 21, 2010, and a Reply was filed on January 3, 2011.  The court heard the matter on January 18, 2011.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the

court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

## IV. <u>DISCUSSION</u>

The Motion makes two preliminary arguments as to aspects of the Complaint, and then specifically challenges each of the twelve Counts. The court first addresses the preliminary arguments, and then turns to the arguments as to each specific Count.[3]

### A. **Preliminary Arguments**

#### 1. *Bank of America*

Bank of America first argues that it is improperly named solely as "Bank of America," which is not a legal entity. Whether or not it should more precisely be named as "Bank of America, N.A. (National Association)" or by some other corporate description, the common name "Bank of America" is technically deficient for purposes of describing the corporate entity Plaintiffs seek to hold liable. Regardless, Bank of America also points out that it is named only in the

---

[3] The Complaint also mentions the Equal Opportunity Credit Act, Compl. ¶ 25; the "Fair Lending/Fair Debt Collection Act," *id.* ¶ 11; and the Federal Trade Commission Act, *id.* ¶¶ 11, 40. Plaintiffs, however, assert no claims for relief (*i.e.*, no Counts) for any alleged violations of those federal laws. The Complaint as written fails to state a claim for violations of those statutes. *Cf. Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

caption of the Complaint.  There are no factual allegations as to Bank of America in the body of the Complaint.

Plaintiffs respond by arguing that Countrywide was acquired by Bank of America in 2007 or 2008.  They also contend that BAC is a wholly-owned subsidiary of Bank of America.  They seek to hold Bank of America liable both as a "successor in interest [to Countrywide] and as a principal."  Pls.' Opp'n at 7. Whether or not those contentions are true, none of these details is in the Complaint. As the Complaint now stands, it states no claim against "Bank of America." Accordingly, the Motion is GRANTED as to Bank of America.  The dismissal as to Bank of America is without prejudice.  Plaintiffs may file an Amended Complaint attempting to assert precise theories against a properly-named defendant or defendants.

## 2.    *"Fraud"*

Moving Defendants next argue the court should strip the Complaint's averments of fraud because the averments do not meet Rule 9(b)'s requirement of particularity.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]").  They argue that, because multiple defendants are involved, the Complaint is deficient  -- it does not identify each Defendant's separate role in a fraudulent scheme and fails to give

each Defendant notice of particular misconduct.  *See also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (stating that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).  The Complaint fails to explain "the who, what, when, where, and how of the [fraudulent] misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Although these arguments regarding lack of particularity might be valid, Plaintiffs have not asserted a separate claim for fraud.  There simply is no fraud claim for the court to dismiss.  The Complaint does mention the word "fraudulent" in various counts (*e.g.*, Count I, Compl. ¶ 43 ("fraudulent loan transaction"); Count III, Compl. ¶ 57 ("Defendants' actions in this matter have been . . . fraudulent"); Count IV, Compl. ¶ 68 (same)).  It does not, however, contain a Count asserting a state-law claim for fraud and it is unclear whether Plaintiffs are even seeking such relief.  The court therefore declines as a general matter to strip all "averments of fraud" from the Complaint.  Each Count stands or falls on its own; if particularity is required for a specific Count, the court will address such requirements individually.

**B.        Counts I and II -- Declaratory and Injunctive Relief**

Moving Defendants contend that Count I (Declaratory Relief) and Count II (Injunctive Relief), as pled, fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action.  The court agrees that these Counts fail to state a claim.

Initially, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. Arco Midcon, L.L.C.*, --- F. Supp. 2d ----, 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).  Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action.

///

///

///

As for declaratory relief, Count I is apparently seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[4]  Count I alleges that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contend[] that Defendants did not have the right to foreclose on the Subject Property[.]"  Compl. ¶ 43.  Plaintiffs ask the court to declare that "the purported power of sale contained in the loan [is] of no force and effect at this time" because of "numerous violations of State and Federal laws designed to protect borrowers[.]"  *Id.* ¶ 44.  "As a result of Defendants' actions, Plaintiffs have suffered damages . . . and seek[] declaratory relief that Defendants' purported power of sale is void[.]"  *Id.* ¶ 45.

Given these allegations, Plaintiffs' declaratory relief claim is not cognizable as an independent cause of action under the Declaratory Relief Act. *See Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be

---

[4] The Declaratory Judgment Act provides in pertinent part:

> a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

adjudicated in cases brought by any interested party involving an actual

controversy that has not reached a stage at which either party may seek a coercive

remedy and in cases where a party who could sue for coercive relief has not yet

done so." (citation and quotation signals omitted)). That is, because Plaintiffs'

claims are based on allegations regarding Defendants' past wrongs, a claim under

the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other

causes of action. *See, e.g.*, *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at

*8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief "rises or falls with [the]

other claims.") (citation omitted); *Mangindin v. Washington Mut. Bank*, 637 F.

Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary

where an adequate remedy exists under some other cause of action."); *Ruiz v.

Mortg. Elec. Registration Sys., Inc*., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3,

2009) (dismissing claim for declaratory judgment where foreclosure already

occurred such that the plaintiff was seeking "to redress past wrongs"); *Edejer v.

DHI Mortg. Co.*, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's

declaratory relief cause of action fails because she seeks to redress past wrongs

rather than a declaration as to future rights.").

   Accordingly, the court DISMISSES Counts I and II without leave to

amend. If Plaintiffs eventually prevail on an independent claim, the court will

necessarily render a judgment setting forth (*i.e.*, "declaring") as such and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because Plaintiffs prevail -- or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure -- on an independent cause of action.

## C.       Count III -- Covenant of Good Faith and Fair Dealing

Count III is entitled "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing." Plaintiffs allege that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Compl. ¶ 52, and that Defendants "willfully breached their implied duty of good faith and fair dealing" by engaging in the acts alleged in the Complaint (such as failing to make disclosures, failing to perform proper underwriting, and "willfully placing Plaintiffs in a loan that [they] did not qualify for"). *Id.* ¶¶ 55-56.

This claim asserts the tort of "bad faith." *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). But, although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.

"In *Best Place*, the Hawaii Supreme Court noted that although Hawaii

law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract." *Jou v. Nat'l. Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (citing *Best Place*, 82 Haw. at 129, 920 P.2d at 334). "The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts." *Id.* (citing *Best Place*, 82 Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, requires a contractual relationship between an insurer and an insured." *Id.* (citing *Simmons v. Puu*, 105 Haw. 112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action. *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary

14

responsibility, public interest, and adhesion." *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). It is thus unlikely that Plaintiffs could recover for bad faith as alleged in Count III.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the

bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" *Id.* (quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Accordingly, Count III is DISMISSED.  Because further amendment would be futile, dismissal of Count III is without leave to amend.

## D.    Count IV -- TILA

Moving Defendants next challenge Plaintiffs' claim that Defendants (primarily Countrywide) violated TILA by, among other things, failing to provide: (1) certain initial disclosures regarding details of the loan, (2) a correct payment schedule, (3) an accurate good faith estimate, (4) information about interest rates and insurance, and (5) disclosures of Countrywide's dual role as lender and broker. Compl. ¶¶ 60-61, 63-64.  Moving Defendants argue that the TILA claims for damages and for rescission are time-barred.

## 1.    *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.*  Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiffs' TILA claim for damages is time-barred unless equitable tolling applies -- it was brought over six years from consummation of the

loan transaction. The Complaint asserts only that the statute of limitations was tolled "due to Defendants' failure to effectively provide the required disclosures and notices." Compl. ¶ 62. Even if true, this allegation is insufficient to satisfy equitable tolling because it would establish no more than the TILA violation itself. *See, e.g.*, *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations."); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("Plaintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless.").

The Complaint pleads no facts indicating that Defendants prevented Plaintiff from discovering the alleged TILA violation or caused Plaintiff to allow the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'")

(quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).   Without any factual allegations that support the inference that Plaintiffs did not have a reasonable opportunity to discover the TILA violations, the Complaint, even when liberally construed, does not support tolling the statute of limitations.  *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

Accordingly, the court DISMISSES Plaintiffs' TILA claim for damages, but grants Plaintiffs leave to amend.

### 2.      *Rescission under TILA*

As to Plaintiffs' claim for rescission pursuant to TILA, Compl. ¶ 65, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  15 U.S.C. § 1635(a).  If

the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f).[5] Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913). That is, the three-year period is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).

Plaintiffs' TILA claim for rescission is based on an August 2, 2004 loan transaction. Plaintiffs filed this action over six years later. Given that equitable tolling cannot apply to this claim, any amendment seeking rescission would be futile. The court therefore DISMISSES Plaintiffs' claim for rescission pursuant to TILA as time-barred without leave to amend.

## E.    Count V -- RESPA

Count V alleges a violation of RESPA. Specifically, the Complaint alleges against all Defendants that (1) "the fees for this loan were . . . egregious,"

---

[5] A transaction is "consummated" when a consumer becomes contractually obligated. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).

Compl. ¶ 74, (2) "points and fees paid to [Countrywide] (as broker) were excessive at 2.82% of the loan amount," *id.* ¶ 75, and (3) "Defendants, and each of them, did give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or Yield Spread Premiums." *Id.* ¶ 76. The Complaint, therefore, is making a RESPA claim under 12 U.S.C. § 2607, for illegal fees at closing.[6]

Initially, to the extent that Count V claims Countrywide or others received "excessive" fees, that claim under RESPA fails as a matter of law -- § 2607 does not prohibit "excessive" fees. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554 (9th Cir. 2010) (concluding that § 2607 "cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

As to other aspects of § 2607, Moving Defendants assert that a RESPA claim is time-barred. The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. The one-year period applies to a claim under § 2607. Specifically, 12 U.S.C. § 2614 provides:

---

[6] Any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010).

Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

Although the Ninth Circuit has not addressed the precise issue, other courts -- including this court -- have found that equitable tolling may apply to a RESPA claim. *See Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw. Nov. 24, 2010) (citing cases).

As with Plaintiffs' claim for damages under TILA, Plaintiffs brought this action well past either the applicable statute of limitations for RESPA violations. Any illegal fee would have occurred in 2004; this action was filed in 2010. Moreover, the Complaint includes no allegations suggesting that equitable tolling may apply.

Accordingly, the court DISMISSES Plaintiffs' RESPA claim. The dismissal is without leave to amend as to (1) any claim under § 2607 asserting a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing such amendments would be futile. *See Martinez*, 598 F.3d at 554, 557. Otherwise, the dismissal is with leave to amend.

**F.      Count VI -- Rescission**

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons:  1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief."  Compl. ¶ 79. Like Counts I and II, generally "[r]escission is only a remedy, not a cause of action."  *Bischoff v. Cook*, 118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. App. 2008).  The remedy thus "rises or falls with [the] other claims."  *Ballard*, 2010 WL 5114952, at *8.  Indeed, as alleged here, Count VI specifically acknowledges that it is seeking rescission based upon "independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to amend.  The court addresses the merits of rescission separately, when addressing any independent claims allowing rescission.

**G.      Count VII -- Unfair and Deceptive Acts and Practices**

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of [their] home, equity, as well as [their] past and future investment."  Compl. ¶ 86.  Plaintiffs allege that Defendants "failed to undergo a diligent underwriting process," failed to disclose

matters, should not have approved their loan because they could not afford it, and "had knowledge of these facts, circumstances and risks but failed to disclose them." *Id.* ¶ 84.  By alleging "Unfair and Deceptive Acts and Practices," Plaintiffs are making a claim under HRS § 480-2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.").

Without more, Plaintiffs' theory of an unfair practice does not state a claim under § 480-2.  In granting summary judgment against a borrower on a § 480-2 claim, this court in *McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), relied on the rule that "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'"  *Id.* at *6 (quoting *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).

And, as cited in *McCarty*, ample authority supports this proposition. *See Sheets v. DHI Mortg. Co.*, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan . . . .  The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'"

(quoting *Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)

(finding that borrowers "had to rely on their own judgment and risk assessment to

determine whether or not to accept the loan")). "[A]s a general rule, a financial

institution owes no duty of care to a borrower when the institution's involvement

in the loan transaction does not exceed the scope of its conventional role as a mere

lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56

(Cal. App. 1991). Nothing in the Complaint indicates that any Defendant

"exceed[ed] the scope of [a] conventional role as a mere lender of money."[7] The

claims fails on that basis alone. The court, however, cannot conclude at this time

that further amendment is futile and will allow Plaintiffs an opportunity to amend

Count VII to attempt to state a claim.

Moving Defendants also argue that this claim is barred by the

applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a chapter

480 claim "unless commenced within four years after the cause of action accrues").

The cause of action here accrued on August 2, 2004, when the loan transaction was

---

[7] In their Opposition, Plaintiffs also argue: (1) that MERS is itself "the vehicle for much of the concealment" and that "actual terms of [an unconscionable] contract were concealed from them," Pls.' Opp'n at 12; (2) that they suffered specific damage to their credit rating and damages by loss of their property, both caused by the unfair and deceptive practices; and (3) various theories regarding MERS and the lack of an assignment of the promissory note to or from MERS. *Id.* at 3. These arguments, however, are not based on facts pled in the Complaint. The court cannot rely on arguments of counsel in place of factual allegations in the Complaint.

consummated.  *See, e.g.*, *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1290 (D. Haw. 2007).  The § 480-2 claim was filed over two years late.  Nevertheless, because Count VII as written fails regardless of the statute of limitations, the court need not reach whether it is time-barred.  In considering whether to amend Count VII, counsel should consider the statute of limitations and whether it is possible to allege an applicable theory of tolling.[8]

Accordingly, Count VII is DISMISSED with leave to amend.

## H.    Count VIII -- Breach of Fiduciary Duty

Count VIII alleges, without distinguishing between various

---

[8]  Under HRS § 657-20, Hawaii law does allow for an extension of certain statutes of limitation where there has been fraudulent concealment.  HRS § 657-20 ("[e]xtension by fraudulent concealment") provides:

> If any person who is liable to any of the actions mentioned *in this part or section 663-3*, fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. (Emphasis added.)

This section has been mentioned in a § 480-2 context, *see Leibert v. Finance Factors, Ltd.*, 71 Haw. 285, 292, 788 P.2d 833, 837 (1990), but *Leibert* did not analyze whether a § 480-2 claim is "mentioned in this part [chapter 657, Part I (§§ 657-1 to -24)]" or whether it matters that § 480-2 has its own applicable four-year limitations period in § 480-24(a).  Because Count VII as written fails regardless of the statute of limitations, the court need not reach the applicability of § 657-20 (or any other tolling theory) here.

Defendants, that Defendants owe Plaintiffs a fiduciary duty and breached that duty by failing "to advise or notify Plaintiffs . . . that Plaintiffs would or had a likelihood of defaulting on the loan." Compl. ¶ 89. Defendants also allegedly breached a fiduciary duty owed to Plaintiffs by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another[.]" *Id.* ¶ 90. Plaintiffs also allege that failure to provide material disclosures "while in the capacity of [Plaintiffs'] lender" and failure to comply with TILA and RESPA" are violations of a fiduciary responsibility owed to Plaintiffs by Defendants." *Id.* ¶¶ 91-92.

These allegations fail to state a claim. In *McCarty*, this court set forth a myriad of case law for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their
> borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan
> Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The
> relationship between a lending institution and its
> borrower-client is not fiduciary in nature."); *Miller v.
> U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App.
> 1994) ("The general rule . . . is that a lender is not a
> fiduciary of its borrower."); *Huntington Mortg. Co. v.
> DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A
> lender does not owe a fiduciary duty to a borrower absent
> some special circumstances."); *Spencer v. DHI Mortg.
> Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009)
> ("Absent 'special circumstances' a loan transaction 'is at
> arms-length and there is no fiduciary relationship

> between the borrower and lender.'") (quoting *Oaks Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D. D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted).

*McCarty*, 2010 WL 4812763, at *5. Given this rule, Plaintiffs fail to state a claim for breach of fiduciary duty. As with a § 480-2 claim, nothing in the Complaint alleges "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation, much less a fiduciary duty owed by loan servicers like MERS or assignees. *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.").

Accordingly, Count VIII is DISMISSED with leave to amend.

## I.    Count IX -- Unconscionability

Moving Defendants next argue that Count IX entitled "Unconscionability -- UCC-2-3202 (sic 2-302)" fails to state a claim. Count IX asserts that courts may refuse to enforce a contract or portions of a contract that are unconscionable, Compl. ¶ 94, and courts are to give parties an opportunity to

present evidence regarding a contract's "commercial setting, purpose and effect" to determine if a contract is unconscionable. *Id.* ¶ 95. It goes on to allege only the following facts:

> Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's (sic), the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

*Id.* ¶ 96.

"Unconscionability" is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); *see also* *Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part

of a different -- that is, independent -- cause of action, such a claim "is asserted to prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[9] *Skaggs* dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," and not any specific contractual term. *Id.* Likewise, Count IX fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.

Accordingly, Count IX is DISMISSED with leave to amend.

## J.    Count X -- Predatory Lending

Moving Defendants also challenge Count X entitled "Predatory Lending." Count X repeats a variety of allegations (*e.g.*, failure to disclose terms

---

[9] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS 480-2). In *Thompson*, the remedy of rescission was based on an independent claim. Similarly, a remedy for an unconscionable contract may be possible; a stand-alone claim asserting only "unconscionability," however, is improper. *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009).

and conditions or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the basis of other causes of action.

Courts, however, have found that there is no common law claim for "predatory lending." *See Haidar v. BAC Home Loans Servicing, LP*, 2010 WL 3259844, at \*2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); *Pham v. Bank of Am., N.A.*, 2010 WL 3184263, at \*4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending"). To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in another statutory or common-law cause of action such as fraud -- the term "predatory lending" is otherwise too broad. *See Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at \*3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend -- agreeing that the term is expansive and fails to provide proper notice, where Defendants "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); *see also Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047, at \*2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending where plaintiffs failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.' The court is unaware of any such cause of action.").

The court finds these authorities persuasive. Count X fails to state a cause of action. The court does not mean to imply that "predatory lending" is proper and cannot form the basis of some cause of action. But Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action, and the precise elements of such a claim are undefined. The ambiguous term "predatory lending" potentially encompasses a wide-variety of types of alleged wrongdoing. Recognizing a cause of action here would thus fail to provide proper notice. *See Vissuet*, 2010 WL 1031013, at *3.

Thus, Count X is DISMISSED with leave to amend to allow an opportunity for Plaintiffs to attempt to state a cause of action based on specific activities (which others might otherwise describe as "predatory") under a recognized statutory or common-law theory. To be clear, however, Plaintiffs may not amend and re-allege a general cause of action for "predatory lending."

## K.    Count XI  -- Quiet Title

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the property," Compl. ¶ 113, and therefore Plaintiffs are entitled to a declaration that "the title to the Subject Property is vested in Plaintiff's (sic) alone[.]" *Id.* ¶ 114.

The court infers that Plaintiffs are making a claim under HRS § 669-

1(a) ("[Quiet title] [a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.").  The court agrees with Moving Defendants that Plaintiffs have not alleged sufficient facts regarding interests of various parties to make out a cognizable claim for "quiet title." Plaintiffs have merely alleged elements of § 669-1, and thus the Count fails to state a claim.  *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness.  "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, --- F. Supp. 2d ----, 2010 WL 3155808, at *20 (N.D. Cal. Aug. 9, 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).  "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288 (1994) ("a

mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

Applying this law here, which the court finds persuasive, Plaintiffs have not indicated that they have paid their outstanding loan balance, much less that they are able to do so. Accordingly, they fail to state a claim for quiet title. Count XI is DISMISSED without prejudice.

**L.      Count XII -- Lack of Standing (MERS)**

Finally, Moving Defendants challenge Count XII, entitled "Lack of Standing; Improper Fictitious Entity" against MERS. Moving Defendants argue -- and Plaintiffs agree -- that Count XII does not state a claim because a claim for "lack of standing" makes no sense against a defendant. Rather, standing is a requirement for a plaintiff in order to proceed in a lawsuit.

Count XII alleges generally that MERS is an "artificial entity" "designed to circumvent certain laws and other legal requirements dealing with mortgage loans." Compl. ¶ 118. Plaintiffs assert that an assignment of the note or mortgage to MERS is illegal, *id.* ¶ 119, and therefore "MERS has no legal standing to foreclose." *Id.* ¶ 122. These allegations fail to state a claim.

Plaintiffs appear to be alleging that MERS may not foreclose, or has

improperly foreclosed, because it is not a holder of the note.  In their Opposition, Plaintiffs argue that they were attempting to raise MERS' "role in the concealment and unfair practices alleged throughout the complaint."  Pls.' Opp'n at 15.  If this is the purpose of Count XII, the court will allow Plaintiffs an opportunity to clarify the factual allegations as to MERS, but not to do so as now written in this Count. Plaintiffs may, if appropriate, attempt in an Amended Complaint to assert alleged illegalities as to MERS' status in an independent cause of action -- not in a count entitled "Lack of Standing; Improper Fictitious Entity."  Count XII is DISMISSED with leave to amend.

## V.  CONCLUSION

The Motion is GRANTED and the Complaint is DISMISSED with leave to amend as to specific counts as explained above.  Counts III, IV (for rescission), V (for excessive fees), and VI are dismissed without leave to amend.

Plaintiffs are GRANTED until February 11, 2011 to file an Amended Complaint attempting to cure the identified deficiencies.  To provide proper notice, the Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant or specific Defendants and explain how each Defendant is liable (or make clear whether a claim is as to all Defendants).  Failure to file an Amended Complaint by February 11, 2011 will result in automatic dismissal of

this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 21, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Phillips et al. v. Bank of Am. et al.*, Civ. No. 10-00551 JMS/KSC, Order Granting Defendants Bank of America, Countrywide Home Loans, Inc., and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss and Granting Leave to Amend