IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOHN J. PHILLIPS III, an individual, MARGARET M. PHILLIPS, an individual, | ) ) ) | CIVIL NO. 10-00551 JMS-KSC |
| | ) | ORDER GRANTING IN PART |
| Plaintiffs, | ) ) | DEFENDANTS BANK OF AMERICA, N.A.; BAC HOME |
| | ) | LOANS SERVICING, LP; |
| vs. | ) ) | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; |
| BANK OF AMERICA, N.A.,; BAC | ) | AND FEDERAL NATIONAL |
| HOME LOANS SERVICING, LP; | ) | MORTGAGE ASSOCIATION'S |
| MORTGAGE ELECTRONIC | ) | MOTION TO DISMISS, AND |
| REGISTRATION SYSTEMS; | ) | GRANTING LEAVE TO AMEND |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION; RYAN MCNALLY; | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART DEFENDANTS BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, LP; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND FEDERAL NATIONAL MORTGAGE ASSOCIATION'S  MOTION TO DISMISS, AND GRANTING LEAVE TO AMEND

## I.  INTRODUCTION

This action arising out of a mortgage foreclosure is again before the

court after the prior Complaint was dismissed without prejudice as to several

counts.  Plaintiffs John J. Phillips III and Margaret M. Phillips ("Plaintiffs") filed

the prior Complaint while proceeding *pro se*.  The Amended Complaint -- filed

after Plaintiffs obtained counsel -- asserts different theories of recovery and names several new Defendants, but appears to arise out of the same transaction as in the prior Complaint.

Defendants Bank of America, N.A. ("BofA"); BAC Home Loans Servicing, LP ("BAC Home Loans"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and Federal National Mortgage Association ("FNMA") (collectively, "Moving Defendants") now move to dismiss the Amended Complaint for failure to state a claim. The Amended Complaint's basis for federal jurisdiction is 28 U.S.C. § 1331 (federal question) -- Count I asserts violations of the Sherman and Clayton Antitrust Acts. Plaintiffs also assert nine state-law counts, invoking the court's supplemental jurisdiction, 28 U.S.C. § 1367(a). For the reasons set forth, the court DISMISSES Count I for failure to state a federal antitrust claim, but grants Plaintiffs leave to amend. Because the court has only supplemental jurisdiction over the remaining claims, the court declines to address those state law claims until Plaintiffs assert a cognizable claim based on federal law.

## II. BACKGROUND

Plaintiffs filed the previous Complaint in this action on September 28, 2010, naming as Defendants "Bank of America," Countrywide Home Loans, Inc.

("Countrywide"), MERS, Fidelity National Title Insurance Company, and Northwest Trustee Services. Plaintiffs alleged federal and state law claims stemming from an August 2, 2004 mortgage transaction concerning real property located at 160 Keonekai Road, No. 6-101, Kihei, Hawaii 96753 (the "subject property"), and a 2010 foreclosure on the subject property.[1] Plaintiffs sought declaratory and injunctive relief, as well as damages and rescission of the mortgage transaction.

The prior Complaint generally sought relief based on "predatory lending" whereby one or more of the then-named Defendants qualified Plaintiffs for a loan knowing they were not qualified for and could not repay, and that terms of the transaction were not clear and Defendants never explained the transaction to them. It asserted that unspecified Defendants charged excessive or illegal fees. *See generally* Compl. at 7-9, Doc. No. 1.

The prior Complaint alleged twelve separate counts: (1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violation of the Truth in Lending Act ("TILA"), 15

---

[1] The record indicates the subject mortgage was recorded on August 11, 2004 and has an effective date of August 2, 2004. *See* Am. Compl. Ex. 1 (mortgage). The court takes judicial notice of the recorded mortgage because the Complaint refers to it and it is a public document with no dispute as to authenticity. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (setting forth factors for judicial notice).

U.S.C. § 1601 *et seq*.; (5) Violation of the Real Estate Settlement Practices Act

("RESPA"), 12 U.S.C. § 2601; (6) Rescission; (7) Unfair and Deceptive Acts and

Practices; (8) Breach of Fiduciary Duty; (9) Unconscionability; (10) Predatory

Lending; (11) Quiet Title; and (12) "Lack of Standing (MERS)."

On January 21, 2011, the court granted a motion to dismiss the prior

Complaint, but granted Plaintiffs leave to amend as to certain counts.  Doc. No. 34.

The court dismissed Counts I, II, III, and VI without leave to amend.  Likewise,

certain aspects of Counts IV and V were dismissed without leave to amend.  As to

the other counts, the court allowed Plaintiffs an opportunity to state claims, either

by (1) amending particular counts, or (2) as to others, "to clarify the factual

allegations" and "if appropriate, attempt in an Amended Complaint to assert

alleged illegalities . . . in an independent cause of action."  *Id.* at 36.

Accordingly, on February 11, 2011, Plaintiffs filed the Amended

Complaint, which was drafted by counsel.  The Amended Complaint, also based

upon the August 2, 2004 mortgage transaction and subsequent foreclosure on the

subject property, asserts different causes of action and changes theories by raising

a wholesale attack on the validity of the Countrywide's former operations

(allegedly implicating BofA and BAC Home Loans) and the system under which

MERS operates.  Plaintiffs did not attempt to re-state claims for violations of TILA

4

or RESPA. As they indicated they would do in opposing the motion to dismiss the prior Complaint, however, Plaintiffs' Amended Complaint generally disputes the validity and effect of the assignment (or lack thereof) of their mortgage or promissory note (or rights in the mortgage or note) from MERS to BAC Home Loans.

The Amended Complaint also clarifies that the subject property was sold at auction on March 8, 2010, after a nonjudicial foreclosure. Am. Compl. at 14. A quitclaim deed dated March 9, 2010 was recorded in the Hawaii Bureau of Conveyances by BAC Home Loans, as grantor, to Defendant FNMA, as "purchaser or its nominee." *Id.* at 15. Defendant FNMA filed an ejectment action in state court on June 9, 2010. *Id.*

Plaintiffs assert that Countrywide, as predecessor-in-interest to BofA and BAC Home Loans, "did not care that the Plaintiffs did not have the ability to repay the loan" because it intended to pool the loan with others, securitize them, and sell them to investors. Am. Compl. at 9. The securitization model, as described in the Amended Complaint through the use of MERS, resulted in a situation where BofA and/or BAC Home Loans did not hold Plaintiffs' mortgage and could not have assigned it. *Id.* at 12. Plaintiffs allege that none of the Defendants "had or has legal authority to foreclose the subject mortgage and/or

eject Plaintiffs from the premises." *Id.* at 17.

The Amended Complaint alleges nine counts against corporate Defendants BofA, BAC Home Loans, MERS, and FNMA. Plaintiffs also named Ryan McNally ("McNally") as an individual Defendant, who is alleged to have acted as Plaintiffs' mortgage broker and also as sales manager for Countrywide (predecessor-in-interest to BofA) in Kihei, Maui, Hawaii. Am. Compl. ¶ 10. The Amended Complaint asserts the following claims:

        Claim I -- Violations of the Sherman/Clayton Antitrust Acts (Against BofA, BAC Home Loans, and MERS)

        Claim II -- Violations of Hawaii Antitrust/Antimonopoly Acts (Against BofA, BAC Home Loans, and MERS)

        Claim III -- Civil Conspiracy (Against BofA, BAC Home Loans, and MERS)

        Claim IV -- Fraudulent or Negligent Misrepresentation (Against BofA, BAC Home Loans, and McNally)

        Claim V -- Unfair and Deceptive Acts or Practices (Against BofA, BAC Home Loans, MERS, and McNally)

        Claim VI -- Breach of Fiduciary Duty (Against McNally, BofA, and BAC Home Loans)

        Claim VII -- Mistake (Against BofA and BAC Home Loans)

        Claim VIII -- Unjust Enrichment (Against BofA, BAC Home Loans, MERS and McNally)

        Claim IX -- Intentional Infliction of Emotional Distress (Against

BofA and MERS)

Count I, which asserts violations of federal antitrust laws, is the sole basis of federal jurisdiction. The Amended Complaint also attempts to invoke diversity of citizenship as an alternate basis of federal jurisdiction. But Plaintiffs have named McNally as an individual Defendant, and asserted several state law claims against him. McNally is alleged to have acted as sales manager for Countrywide at a Kihei, Maui, Hawaii address. There are no other allegations as to his residency (and his citizenship appears to be of Hawaii). Consequently, subject matter jurisdiction cannot be based on diversity of citizenship. Plaintiffs are Hawaii residents, *id.* ¶ 5, and, under the Amended Complaint's allegations, McNally is not a citizen of a different state. *See, e.g.*, *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1189-90 (9th Cir. 1970) (indicating that "[a] plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction" and therefore "the existence of diversity jurisdiction must be sufficient on the face of the complaint") (citation omitted); Fed. R. Civ. P. 8(a)(1) (providing that a complaint "must contain . . . a short and plain statement of the grounds for the court's jurisdiction"); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("Since the party asserting diversity jurisdiction bears the burden of proof,

[Defendant's] failure to specify Plaintiffs' state citizenship was fatal to Defendants' assertion of diversity jurisdiction [in a notice of removal].") (citation omitted).  That is, Plaintiffs have not demonstrated complete diversity of citizenship in the Amended Complaint.[2]

On March 4, 2011, Moving Defendants filed the present Motion, seeking dismissal of all counts.  Plaintiffs filed an Opposition on May 4, 2011, and Moving Defendants filed their Reply on May 11, 2011.  Moving Defendants also filed a notice of supplemental authorities under Local Rule 7.8 on May 19, 2011. The court heard the matter on May 24, 2011.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must

---

[2]  Subject to an inapplicable exception, "[i]n the case of an amended complaint which joins new parties, diversity must exist at the time the amended complaint is filed."  *Royal Travel, Inc. v. Shell Mgmt. Haw., Inc.*, 2009 WL 2025320, at * 2 (D. Haw. July 10, 2009) (citations omitted).

accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

## IV. <u>DISCUSSION</u>

### A.     The Court Declines to Strike New Counts

Moving Defendants first argue that the court should strike most of the Amended Complaint because it asserts entirely new claims and different theories from the prior Complaint. The court granted leave to amend only as to specific counts, and Moving Defendants thus contend Plaintiffs have exceeded the scope of the court's Order granting leave to amend. *See, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010) ("[W]here leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed

or stricken.").

The court declines to strike the new claims. The prior Complaint was filed while Plaintiffs were proceeding *pro se*, and Plaintiffs' counsel entered an appearance only after the motion to dismiss that prior Complaint was filed. *See* Doc. No. 17. Although Plaintiffs' counsel attempted to defend the prior Complaint as drafted, he did ask for permission (belatedly, and not in accordance with Rule 15 of the Federal Rules of Civil Procedure) to file an Amended Complaint. And some of the allegations made in the Amended Complaint regarding the validity and effect of the assignment of the mortgage or note from MERS to BAC Home Loans were arguments counsel made in opposing the prior motion to dismiss. Order of Jan. 11, 2011, at 4-5; Doc. No. 34. The court acknowledged that those arguments were not pled but would be considered in assessing the plausibility of an Amended Complaint. *Id.* at 5. Those allegations are not a surprise. Similarly, the court gave Plaintiffs an opportunity to plead facts attempting to clarify their theory as to MERS' "role in the concealment and unfair practices alleged throughout the complaint." *Id.* at 35 (quoting Pls.' Opp'n).

Moreover, although the Amended Complaint does assert new parties, claims and theories, they all appear to rise from the same "transaction or occurrence" for purposes of an amendment under Rule 15(c) of the Federal Rules

of Civil Procedure.  Given the circumstances of the filing of the Amended

Complaint, Defendants are not unduly prejudiced by the new claims and theories.

*See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (indicating that

"[p]rejudice to the opposing party is the most important factor" in assessing the

propriety of an amendment that adds new parties and theories).[3]

**B.    Federal Claims**

> ***1.    The Amended Complaint Fails to State an Antitrust Claim***

Count I of the Amended Complaint entitled "Violations of the

Sherman/Clayton Anti-trust Acts," alleges Countrywide used MERS as mortgagee

and "nominee" for the subject mortgage as part of an agreement between

Countrywide, MERS, BofA, FNMA, and "five other large financial institutions" to

use the MERS system to:

> (a) protect and insulate COUNTRYWIDE from
> otherwise valid claims and defenses by mortgagors and
> borrowers by providing an intermediary in the
> transaction; [and]

---

[3] Plaintiffs' counsel indicated at the May 24, 2011 hearing that he is considering -- aside from the federal antitrust theories at issue in this Order -- a further amended complaint to add a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim under 18 U.S.C. §§ 1961-64.  Any attempted assertion of a civil RICO claim is a separate matter from the issues addressed in this Order.  If Plaintiffs desire to assert a civil RICO theory, they must seek leave to file a further amended complaint by motion in compliance with Federal Rule of Civil Procedure 15 (along with a proposed further amended complaint).  Such a motion for leave to file a further amended complaint, if any, should be filed separately from any amended complaint allowed in this Order.

> (b) provide a conduit for the securitization, and exclusive access to the business of servicing securitized mortgage loans [BofA] and DOE Defendants,

Am. Compl. ¶ 53, Doc. No. 35.  This agreement worked

> to the detriment of Plaintiffs, in that they are subject to the imposition of artificially high mortgage rates and fees for mortgage servicing, without any meaningful choice, and without any opportunity to bargain for more advantageous fees, such fees being added to any balance due to the mortgagee in the event of default[.]

*Id.*  Plaintiffs therefore allege that such an agreement was

> inconsistent with a system of free and fair trade guaranteed to all persons, and the restraint of which violates the Sherman Anti-Trust Act, 15 U.S.C. § 2. Plaintiffs and private parties, have standing to bring federal anti-trust claim(s) under the Clayton Anti-Trust Act, 15 U.S.C. § 15.

*Id.*  The Amended Complaint further alleges, in pertinent part, that

> Defendants or their predecessors in interest have engaged in predatory conduct or anticompetitive conduct in an attempt to monopolize the mortgage lending and servicing market, intended at all times relevant herein to control mortgage lending prices and practices, and to destroy competition with respect to their segment of commerce.

*Id.* ¶ 54.

Plaintiffs have specifically invoked an "attempted monopolization" claim under § 2 of the Sherman Act, which provides:  "Every person who shall

12

monopolize, or attempt to monopolize, or combine or conspire with any person or persons, to monopolize . . . trade shall be guilty" of an antitrust violation.  15 U.S.C. § 2.

"To establish a Sherman Act § 2 violation for attempted monopolization, a private plaintiff seeking damages must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power;' and (4) causal antitrust injury." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995) (citation omitted).

"In adopting the federal antitrust laws, Congress allowed private parties to bring suit" with Section 4 of the Clayton Act, 15 U.S.C. § 15.  *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).  But, "in addition to the traditional limitations upon standing imposed by the Constitution, Congress imposed additional limitations upon those who can recover damages under the antitrust laws." *Id.* (citations omitted).  "These limitations are sometimes referred to as the antitrust standing requirements." *Id.*

The factors relevant to antitrust standing are summarized as follows: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the

antitrust laws were intended to forestall; (2) the directness of the injury; (3) the

speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the

complexity in apportioning damages." *Knevelbaard Dairies v. Kraft Foods, Inc.*,

232 F.3d 979, 987 (9th Cir. 2000) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of

Cal.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999)). "The most important limitation is

that the private party must prove the existence of '*antitrust* injury.'" *Pool Water

Prods.*, 258 F.3d at 1034 (citations and internal quotations omitted) (emphasis in

original).

> To show antitrust injury, a plaintiff must prove that his
> loss flows from an *anticompetitive* aspect or effect of the
> defendant's behavior, since it is inimical to the antitrust
> laws to award damages for losses stemming from acts
> that do not hurt competition. If the injury flows from
> aspects of the defendant's conduct that are beneficial or
> neutral to competition, there is no antitrust injury, even if
> the defendant's conduct is illegal *per se.*

*Id.* (quoting *Rebel Oil*, 51 F.3d at 1433) (emphasis in original). Another

requirement is that "the injured party be a participant in the same market as the

alleged malefactors," *i.e.*, "the party alleging the injury must be either a consumer

of the alleged violator's goods or services or a competitor of the alleged violator in

the restrained market." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000,

1008 (9th Cir. 2003) (citation and quotation signals omitted).

Plaintiffs have failed to allege facts establishing an antitrust claim. It

is not enough that they have alleged that Defendants and the MERS system enabled "pooling" of mortgages and securitization to be part of an agreement[4] to "insulate COUNTRYWIDE from otherwise valid claims and defenses by mortgagors and borrowers," Am. Compl. ¶ 53, and that the agreement caused "artificially high mortgage rates and fees for mortgage servicing." *Id.* They have not alleged any facts establishing "specific intent to control prices or destroy competition." *Rebel Oil*, 51 F.3d at 1433. They have not demonstrated "predatory or anticompetitive conduct directed at accomplishing that purpose." *Id.* No facts establish "a dangerous probability of achieving 'monopoly power.'" *Id.* Nor have they established "antitrust injury." *Id.* There are no facts alleged establishing that the conduct of MERS and the securitization process affected *competition*, which is "the critical question for determining whether there is antitrust injury." *Pool Water*

---

[4] By focusing on an illegal agreement, Plaintiffs appear to also be raising a claim under § 1 of the Sherman Act, which they have not specifically pled. Even if a § 1 claim was pled, it would fail under the facts alleged. Section 1 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1.

A Sherman Act § 1 violation requires three elements: "(1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (*i.e.*, 'antitrust injury')." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988) (citations omitted). The second element (restraint of trade) involves determining whether anticompetitive effects outweigh procompetitive benefits. *See, e.g.*, *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1182-83 (9th Cir. 2010).

As with a Sherman Act § 2 claim, Plaintiffs have failed to plead facts "beyond a speculative level" establishing an effect on competition (restraint of trade) or facts establishing an antitrust injury. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

*Prods.*, 258 F.3d at 1036.

Rather, Plaintiffs have made conclusory allegations that fail to make plausible claims for antitrust relief. *See Twombly*, 550 U.S. at 557. That is, Plaintiffs have failed to plead facts sufficient to demonstrate that Defendants engaged in exclusionary, anticompetitive, or predatory behavior beyond a speculative level. *Id.*[5]

### 2.    *Antitrust Claims Are Barred by the Statute of Limitations*

Even if the court could construe the facts as establishing a plausible antitrust theory, the claims as pled are time-barred. The federal antitrust claims must have been brought within four years after accrual. 5 U.S.C. § 15b; *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 236 (9th Cir. 1987) (Sherman

---

[5] In Opposition, Plaintiffs assail the existence of MERS and the "mortgage securitization industry" in more detail. Pls.' Opp'n at 6-8, 11-16. They attempt to add details in response to Moving Defendants' attack on the Amended Complaint's allegations. They explain that MERS "cannot be all things to all people in a mortgage transaction at one time, while being nothing at all at another time," referring to MERS' status "both 'solely as nominee for the lender,' and as 'mortgagee.'" *Id.* at 6-7. Their theory is that "MERS['] contention that it can maintain a dual personality is both logically and legally impossible." *Id.* at 7.

Although not clear, Plaintiffs' challenge to the "dual role" of MERS appears to be raising a "split the note" theory of wrongful foreclosure that has been rejected elsewhere. *See, e.g.*, *In re. Mortg. Elec. Registration Sys. (MERS) Litig.*, 2011 WL 251453, at *8 (D. Ariz. Jan. 25, 2011) (concluding in multidistrict litigation that "[t]he MERS system is not fraudulent"); *Cervantes v. Countrywide Home Loans*, 2009 WL 3157160, at *10 (D. Ariz. Sept. 24, 2009) (same).

In any event, Plaintiffs may not rely on facts stated in their Opposition that were not pled in the Amended Complaint. *See, e.g.*, *Dodds v. BAC Home Loans Servicing, LP*, 2011 WL 1483971, at *9 (D. Haw. Apr. 19, 2011) ("Plaintiff may not raise new arguments in his Opposition for the first time, thus any argument relating to MERS and its role in the assignment of the loan, must be disregarded.").

Act); *Conmar Corp v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 501 (9th Cir. 1988) (Clayton Act). "A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act." *Pace*, 813 F.2d at 237 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).

Here, Plaintiffs allege antitrust violations when "COUNTRYWIDE agreed to include MERS as mortgagee and 'nominee' for the Mortgage as part of an agreement" that "insulate[d] COUNTRYWIDE from otherwise valid claims" and "provided a conduit for the securitization" of the mortgage loan. Am. Compl. ¶ 53. This agreement occurred on August 2, 2004 when the mortgage was consummated -- over six years before Plaintiffs filed suit. The antitrust claims are over two years late. They are time-barred.

In Opposition, Plaintiffs attempt to assert new factual matter regarding the consequence of the securitization process that they contend occurred within the limitations period (*e.g.*, Plaintiffs "got (a) the 'runaround,' when the 'servicers' he called promise to help with a modification and did nothing; and (b) the 'shaft' when he was subject to a foreclosure by a party that did not have title to their mortgage or note." Pls.' Opp'n at 16. Again, however, these types of acts are not pled in the Amended Complaint. *See Dodds*, 2011 WL 1483971, at *9 ("Plaintiff

may not raise new arguments in his Opposition for the first time.").

Plaintiff also argue that a continuing violation theory, or equitable tolling, may apply. A continuing violation theory, however, requires at least one act within the limitations period, and none is alleged here. Generally, "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000); *see also O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))).

Plaintiffs, however, have failed to allege sufficient facts to sustain an equitable tolling argument. Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999). The Amended Complaint fails to describe the "who, what, when, where, and how of the misconduct" at issue here. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

In short, Plaintiffs' antitrust theories -- if not inadequately pled -- are time-barred. And the Amended Complaint fails to allege a factual basis for either a continuing violation or equitable tolling theory.

### 3. *Leave to Amend and Supplemental Jurisdiction*

Plaintiffs have asked for leave to amend if the court concludes that their allegations are insufficient. In their Opposition, they "recognize that there may be somewhat of a disconnect between Defendants' conduct and the injuries that have inured to Plaintiffs as a result." Pls.' Opp'n at 13. They say they "are only now beginning to uncover the facts related to a well-protected cache of secrets[.]" *Id.*

The court has wide discretion whether to grant leave to amend a complaint, but must be guided by Federal Rule of Civil Procedure 15(a), which provides that "leave shall be freely given when justice so requires." This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Given (1) that the initial Complaint was filed by Plaintiffs proceeding pro se, and (2) the complexity of antitrust law, the court cannot yet say that further amendment would be futile. The court will therefore dismiss Count I without prejudice.

Because Count I is the only basis of federal jurisdiction, the court does not address the other nine state law counts asserted in the Amended Complaint. If Plaintiffs do not file a Second Amended Complaint, the court will decline jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c) and dismiss them without prejudice. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point towards declining to exercise jurisdiction over the remaining state-law claims[.]" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *Curiel v. Barclays Capital Real Estate Inc.*, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010) (reasoning that "primary responsibility for developing and applying state law rests with the state courts" and -- after dismissing TILA and RESPA claims -- declining to exercise supplemental jurisdiction over state law claims sounding in wrongful foreclosure).

If Plaintiffs choose to file a Second Amended Complaint that states a cognizable federal claim against Defendants, however, the court will retain

jurisdiction over related state law claims included in the Second Amended

Complaint and address them if challenged at that time. Any state law claims would

need to be re-alleged if Plaintiffs choose to pursue them. *See Ferdik v. Bonzelet*,

963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no

longer performs any function and is "treated thereafter as non-existent[.]" (quoting

*Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Moving Defendants' Motion to Dismiss is

GRANTED in part. Count I is dismissed without prejudice for failure to state a

claim. Plaintiffs may file a Second Amended Complaint on or before **June 24,**

**2011.** If no such Second Amended Complaint is filed, the state law claims will

also be dismissed without prejudice, and judgment will enter in favor of

Defendants.

As noted above, if Plaintiffs desire to pursue a civil RICO theory in

this action, Plaintiffs must do so separately from the amendment allowed in this

Order. That is, Plaintiffs must seek further leave to amend in compliance with

Federal Rule of Civil Procedure 15. The current deadline for motions to amend

pleadings is extended from June 13, 2011 to **July 8, 2011**.

      IT IS SO ORDERED.

      DATED:  Honolulu, Hawaii, May 31, 2011.



                /s/ J. Michael Seabright
                J. Michael Seabright
                United States District Judge

*Phillips et al. v. Bank of Am. et al.*, Civ. No. 10-00551 JMS/KSC, Order Granting in Part Bank of America, N.A..; BAC Home Loans Servicing, LP; Mortgage Electronic Registration Systems, Inc.; and Federal National Mortgage Association's Motion to Dismiss, and Granting Leave to Amend